UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JONES,

        Plaintiff,                              Civil Action No. 21-11148

v.                                              Matthew F. Leitman
                                                    United States District Judge

HEIDI WASHINGTON, *et al.*,          David R. Grand
                                                      United States Magistrate Judge
        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 25), AND TO *SUA SPONTE* DISMISS FOR FAILURE TO STATE A CLAIM**

*Pro se* plaintiff Ronald Jones ("Jones"), an incarcerated person, brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Michigan Department of Corrections ("MDOC") employees Kalil Tarrance and John Purdom ("Defendants"), and Corizon medical provider Rivard,[1] in their individual capacities for Eighth Amendment violations related to their failure to provide him with certain Covid-19 protective equipment and First Amendment retaliation for filing of grievances. (ECF Nos. 1, 6). The case has been referred to the undersigned for all pretrial purposes pursuant to 28 U.S.C. § 636(b). (ECF No. 18).

---

[1] Defendants note that although their attorney represents only them, "[a]n Eighth Amendment claim [also remains] against Medical Provider Rivard . . . whom the complaint alleges was a contract nurse for Corizon Health, Inc." (ECF No. 25, PageID.229). However, discussed below, *see infra* at 14 n.6, Jones' Eighth Amendment claim against defendant Rivard should be *sua sponte* dismissed pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

On October 6, 2022, Defendants filed a motion to dismiss, or in the alternative, for summary judgment. (ECF No. 25). Jones subsequently filed a response to this motion, and Defendants file a reply (ECF Nos. 31, 32).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. LR 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss or for Summary Judgment **(ECF No. 25)** be **GRANTED.  IT IS FURTHER RECOMMENDED** that Jones' Eighth Amendment claim against defendant Rivard be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).

## II.   REPORT

### A.   Background

Jones, a MDOC prisoner who is currently confined at the Earnest C. Brooks Correctional Facility in Muskegon, Michigan, brings this § 1983 civil rights action based on alleged violations of his First and Eighth Amendment rights based on incidents that took place in July and August of 2020, during which time he was incarcerated at the Macomb Correctional Facility ("MRF") . (ECF Nos. 1, 6).

In short, Jones alleges that on July 31, 2020, during the early days of the Covid-19 pandemic, a fellow inmate, Daniel Perry, was in his cell and suffering a medical

2

emergency.  (ECF No. 1, PageID.3).  He claims that the defendant guards "refused to enter [Perry's] cell," and that they simply "stood in the hallway yelling at Perry[] to get up and walk to the stairs to be wheeled to health care." (*Id.*).  Because Perry was "too weak to drink some water and couldn't put on his shoes," and because the guards were not assisting him, Jones felt as if he was "forced" to enter Perry's cell. (*Id.*).  Jones then "helped [Perry] to put on his shoes and carried him out of the cell down the hall, up the stairs in order for medical providers to render aid to [him]." (*Id.*).  Jones then "asked medical staff and custody staff for (PPE) Equipment," but defendants Purdom and Rivard "both stated: just get him out of the room, we don't have no face shields or gloves." (*Id.*, PageID.3-4).  Jones contends that the defendants' handling of the situation was contrary to Center for Disease Control guidelines for preventing the spread of Covid-19. (*Id.*, PageID.4).  Jones also alleges that he has since tested positive for Covid-19 and spent ten days in the "Covid-Unit" with "aches and pains throughout his body." (*Id.*).

Jones brought claims against various prison officials for deliberate indifference to his health and safety, and, in a supplemental filing (ECF No. 6), also alleged that he was retaliated against by defendant Tarrance for filing grievances regarding the incident.  On October 26, 2021, the Honorable Stephanie Dawkins Davis screened the complaint (including the supplemental filing) pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). (ECF No. 7).  Following that screening process, Jones' only remaining claims are his Eighth Amendment claims against Purdom and Rivard in their individual capacities, and his Eighth and First Amendment

claims against Tarrance in his individual capacity. (ECF No. 7, PageID.43).[2]

Defendants Purdom and Tarrance now move for (1) summary judgment on the Eighth Amendment claims against Tarrance for failure to exhaust administrative remedies; and (2) dismissal of all remaining claims against Tarrance and Purdom for failure to state a claim and under qualified immunity. For the reasons discussed below, the motion should be granted, and all remaining claims, including those against defendant Rivard, should be dismissed.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough

---

[2] The Court notes that on August 3, 2022, Jones filed without leave of court a "Supplemental Complaint" (ECF No. 20), in which he raised entirely new claims related to a different time period, against four new defendants, none of whom are parties to this case. Because this unauthorized "supplemental complaint" raises claims that are wholly unrelated to the original complaint, against defendants who are not parties to this case, the Court will enter an order striking Jones' filing (ECF No. 20). Should Jones wish to pursue the claims raised in his "Supplemental Complaint," he must do so in a separate action against the appropriate defendants.

facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

    **1. Eighth Amendment Claims**

        i. <u>Jones Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted His Eighth Amendment Claim against Defendant Tarrance</u>

In their motion, Defendants argue that summary judgment is warranted on Jones' Eighth Amendment claim against Tarrance because Jones failed to exhaust his administrative remedies for that claim. (ECF No. 25, PageID.230). Specifically, Defendants argue that the salient grievance – the one in which Jones complained about the incident with Perry – MRF-20-08-1627-17Z ("MRF-17Z"), named defendant Purdom and other prison staff, but explicitly "failed to name Tarrance" at any step of the three-step

6

grievance process. (*Id.*, PageID.233-34). The Court agrees that summary judgment should be granted on this claim for failure to exhaust administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner may not bring an action "under [§ 1983] or any other Federal law" to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 25-2, PageID.253). "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which

7

directly affect the grievant, including alleged violations of this policy and related procedures." (*Id.* at ¶F).

A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶C). If a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶Q, W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶DD). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id.* at ¶HH). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶C).

As to the rules concerning the content of written grievances, the Policy provides that "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* at ¶S). The Sixth Circuit has made clear that the failure to comply with this requirement mandates dismissal of such claims based on a failure to properly exhaust administrative remedies. *See, e.g.*, *Hall v. Warren*, 443 F. App'x 99, 105 (6th Cir. Oct. 18, 2011) ("[MDOC Policy] specifically requires the grievance to include the dates, times, places, and *names of all those involved in the issue being aggrieved*.") (emphasis in original)).

Analyzed against these standards, a review of MRF-17Z reflects that this grievance

cannot be fairly read to have grieved an Eighth Amendment claim against Tarrance. At Step I, Jones specified that he was filing MRF-17Z only "against MDOC Sgt. Purdom, c/o Wisner, medical provider[s] Rivard and Donahue" because he "was forced *by the named parties* to physically pick-up prisoner Perry[] . . . who was experiencing cardiac arrest," but "was not provided gloves or PPE gear with pandemic (covid) on the rise." (ECF No. 1, PageID.11) (emphasis added).

After MRF-17Z was denied at Step I, Jones filed a Step II appeal, reiterating that he was "forced" to physically pick up Perry "without PPE Gear," but only naming "Sgt. Purdom and c/o Wisner." (*Id.*, PageID.9-10). Jones then filed a Step III appeal, and this time named only "Sgt. Purdom, C/o Wisner, medical providers Ms. Rivard and Mrs. Donahue." (ECF No. 25-3, PageID.275, 277). The Step III appeal was ultimately denied. (*Id.*).

Based on the above, a reading of MRF-17Z in the light most favorable to Jones still leaves no doubt that he failed to indicate that such grievance was being pursued against defendant Tarrance, as he failed to name Tarrance at any step of the three-step process. *See Dykes-Bey v. Finco*, No. 20-1624, 2021 WL 2767584, at *2 (6th Cir. Feb. 2, 2021) (finding that a plaintiff did not exhaust claims against certain defendants by failing to name them "during any step of the grievance process," and that "prison officials would naturally assume that [plaintiff] complied with the requirement to name those involved" as to those defendants that he did name). Thus, Jones' Eighth Amendment claim against Tarrance is

9

unexhausted, and summary judgment should be granted on that claim.[3]

> ii. Jones Fails to State an Eighth Amendment Claim against Defendant Purdom[4]

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Thus, the Eighth Amendment prohibits prison officials from engaging in conduct that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346). For liability to attach, however, the defendant must have engaged in "active unconstitutional behavior"; "a mere failure to act" will not give rise to liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citations omitted).

In their motion, Defendants argue that Jones fails to state an Eighth Amendment claim against Purdom because his complaint "merely alleges that another prisoner, Perry,

---

[3] Additionally, to the extent Jones seeks to raise an Eighth Amendment claim challenging the general conditions of confinement at MRF related to Covid-19 safety measures, or the medical treatment he allegedly did or did not receive after contracting Covid-19, such claims are also unexhausted. Defendants have presented Jones' Step III Grievance Report demonstrating that, during the relevant time period, Jones only filed two grievances that he pursued through Step III of the grievance process: (1) MRF-17Z, which, as detailed above, only grieved the specific incident with inmate Perry; and (2) MRF-20-09-1927-17A, which grieved only First Amendment retaliation by Tarrance (ECF No. 25-3, PageID.264, 269 276). Jones does not argue, much less present evidence showing that, during the relevant time period, he pursued any other salient grievances concerning Covid-19 safety measures or medical treatment for Covid-19 through the three-step grievance process. Thus, any such claims are subject to dismissal.

[4] Defendants also argue that Jones failed to state an Eighth Amendment claim against defendant Tarrance (*see* ECF No. 25, PageID.239-41), but because the Court is recommending dismissing such claim for failure to exhaust administrative remedies, it declines to address this alternative argument, and will limit its discussion to Jones' Eighth Amendment claims against Purdom.

10

was experiencing cardiac arrest, which Purdom failed to immediately respond to, 'forcing' [Jones] to take action," and that Jones' allegation that he had to "carry another [inmate] during a medical emergency, without more, does not rise to the level of an Eighth Amendment violation." (ECF No. 25, PageID.242, 244). Moreover, they contend that Jones failed to allege that Perry was positive for Covid-19 at the time of the incident on July 31, 2020, or that Purdom was aware that Perry was positive for Covid-19. (*Id.*, PageID.242).

Jones responds that defendant Purdom "not just only knew about the substantial risk of harm (that is Covid-19 virus, and not providing [PPE] according [to] policy, CDC guidelines, and Dept. DOMS) but also failed to respond reasonably . . ." (ECF No. 30, PageID.318). He contends that Purdom and other prison staff "never took time to eliminate the risk of harm once [] learn[ing] about the possibility of contracting Covid, by providing [PPE] for themselves or [Jones]," and "violated security protocol institutional security to ensure security in a prison setting . . . [by allowing Jones] to enter another inmate cell that was in need of medical attention when [the] unit was on 'lockdown' . . ." (*Id.*, PageID.319). Jones asserts that "[i]t was Purdom acknowledging [him] and inmate Wright to go into inmates [sic] cell (Perry[]) unauthorized entry per policy which is a 'Breach of legal Duty' when it was pronounced that housing Unit 1 was on lockdown." (*Id.*, PageID.321). Thus, he contends that Purdom "authorized, or knowingly acquiesced in the unconstitutional conduct through the execution of his job function." (*Id.*, PageID.321).

As an initial matter, to the extent Jones' claim is based on what prison staff did or did not do with respect to assisting or providing medical treatment for *Perry*, such a claim

11

must be dismissed because Jones lacks standing to raise claims on Perry's behalf. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights"); *Corn v. Sparkman,* 82 F.3d 417, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) (unpublished table decision) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights."); *Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (stating inmate "does not have standing to raise arguments on behalf of other[] [inmates]").

To the extent Jones seeks to raise an Eighth Amendment claim against Purdom based on the alleged failure to follow MDOC policy or procedure, such claim also fails as a matter of law because "the failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation." *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005); *see also Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994) (prison regulations "do not create an independent federal due process liberty interest or right in the prisoner.").

Finally, the Court turns to the gravamen of Jones's Eighth Amendment claim – that Purdom purportedly "forced" him to enter Perry's cell to assist Perry during a medical emergency, while failing to provide Jones with the proper PPE to protect himself from being exposed to Covid-19. This theory of an Eighth Amendment violation against Purdom fails as a matter of law because, even construing the allegations and evidence in the light most favorable to Jones, it is clear that Purdom never engaged in "active unconstitutional behavior" vis-à-vis Jones because Jones assisted Perry of his own volition.

12

*Shehee*, 199 F.3d at 300.

Jones alleges in his complaint that, on July 31, 2020, Perry suffered a "Cardiac Arrest" while in his cell, but that Purdom and other prison staff "stood by and refused to enter Perry['s] cell . . . based on the fact that they thought he was dying from the Covid-19 virus and posed a health risk to them," and "stood in the hallway yelling at Perry[] to get up and walk to the stairs to be wheeled to health care." (ECF No. 1, PageID.3-4). Although Jones alleges that it was Purdom's failure to assist Perry that "forced" him to take matters into his own hands to assist Perry out of his cell and carry him to health care, Purdom's sitting idly by does not constitute "active unconstitutional behavior" vis-à-vis Jones. *Shehee*, 199 F.3d at 300.

The record evidence also leaves no doubt that Jones entered Perry's cell and assisted Perry *on his own initiative*, and not as a result of any order by Purdom or other prison staff. For example, there is an affidavit signed by Jones himself and another MRF inmate, Kenneth Wright, in which they attest that, during Perry's "heart attack/stroke," "[a]ll staff refused to aid and assist Mr. Perry based on the fact of the covid virus," and so "inmates Wright and Jones[] took the forced ***initiative*** to help Perry[] . . ." (ECF No. 1, PageID.17) (emphasis added). The lack of personal involvement by Purdom is further corroborated by a letter from MRF inmate Bruce-X Parker to the Michigan Attorney General, in which Parker states that, on July 31, 2020, prison staff were aware of Perry's condition but "refused to touch Mr. Perry . . . [s]o, Prisoner Wright [] and Jones[] literally picked Mr. Perry up and took him up the stairs and put him in a wheel chair while RN's Donahue, Rivard, and c/o Wisner watched without rendering assistance or aid." (ECF No. 1,

13

PageID.19). Again, while the officers' failure to act vis-à-vis *Perry* may not be laudable, such account makes clear that Jones has not raised a material question of fact that Purdom or prison staff ordered *Jones* to enter Perry's cell to render aid.[5] Without such "active unconstitutional behavior," there can be no Eighth Amendment liability against Purdom. *Shehee*, 199 F.3d at 300.[6] Thus, dismissal of Jones' Eighth Amendment claim against Purdom is appropriate.[7]

---

[5] It is also worth noting that the salient grievance documents for MRF-17Z include a Step I response stating that the grievance was denied because "Sgt. Purdom & C/O Wisner were both interviewed and stated that they did not 'force' prisoner Jones to pick-up any prisoner" (ECF No. 1, PageID.11), and a Step II response stating that the grievance was considered "resolved" because "Grievant was not ordered to assist [Perry] by Staff and the incident is being addressed administratively" (*id.*, PageID.13).

[6] Although Rivard has not yet been properly served, a review of the complaint and attached exhibits make clear that Jones' allegations against Rivard are the same as those against Purdom – that because both Purdom and Rivard idly stood by and refused to assist *Perry* during a medical emergency, Jones was "forced" to enter Perry's cell himself to assist Perry, but he was not provided with the proper PPE when doing so. The above analysis regarding Jones' failure to state an Eighth Amendment claim against Purdom applies with equal force to Jones' claim against Rivard; Jones failed to allege any "active unconstitutional behavior" by Rivard. *Shehee*, 199 F.3d at 300. Accordingly, Jones' Eighth Amendment claim against defendant Rivard should be dismissed pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B). *See* 42 U.S.C. § 1997e(c)(1) (stating that, under the PLRA, the Court shall *sua sponte* dismiss a prisoner's § 1983 suit "at any time" if it determines that the action is frivolous or fails to state a claim upon which relief can be granted); 28 U.S.C. § 1915(e)(2)(B) (imposing same requirements for complaints filed *in forma pauperis*).

[7] Defendants also argue that Purdom is entitled to qualified immunity on the Eighth Amendment claim against him because "it was not clearly established that prisoners had a right to full PPE when interacting with other prisoners during a medical emergency . . . [e]specially in 2020 [when] the COVID-19 pandemic presented unprecedented concerns in the correctional environment . . ." (ECF No. 25, PageID.248-49). While the Court need not address this argument in detail based on its above recommendation to dismiss for failure to state a claim, Jones, who "bears the burden of showing that the right was clearly established" by providing "on-point caselaw that would bind a panel of [the Sixth Circuit]," *see Bell v. City of Southfield, Michigan*, 37 F.4th 362, 368 (6th Cir. 2022), simply fails to show that, in light of Covid-19 pandemic, he had a clearly established Eighth Amendment right to the use of PPE when he chose to assist a fellow inmate experiencing a medical emergency because prison staff failed provide such assistance.

14

### 2. First Amendment Claim

Jones' allegations against Tarrance for First Amendment retaliation in his supplemental complaint are sparse. Specifically, Jones alleges that, on August 30, 2020,[8] Tarrance "opened [Jones'] cell door and [] stated 'Inmate Jones keeps contraband in his cell always' to other correctional officers." (ECF No. 6, PageID.34). Tarrance then allegedly looked at Jones "directly in the eyes and stated 'You guys will learn about writing up grievances.'" (*Id.*). Jones claims that these alleged actions clearly constitute an "adverse action" based on his prior filing of grievances, and that such retaliation violated his First Amendment rights. (*Id.*). While there are no allegations explicitly stating that his cell was searched, much less any details about a search, liberally construed, the Court can reasonably infer from the complaint that Jones is alleging Tarrance caused his cell to be searched in retaliation for filing grievances. *See Ashcroft*, 556 U.S. at 678; *Thomas*, 481 F.3d at 437.

A prima facie case for First Amendment retaliation involves three elements: (1) the plaintiff participated in constitutionally-protected activity; (2) the defendant took an adverse action against the plaintiff "likely to chill a person of ordinary firmness" from engaging in the protected conduct; and (3) there is a causal connection between elements one and two – that is, "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir.

---

[8] Jones did not specify a date in his supplemental complaint, but Defendants have presented the salient grievance, MRF-20-09-1927-17A, which reflects that the alleged incident took place on August 30, 2020. (ECF No. 25-3, PageID.269; *see also* ECF No. 25, PageID.236).

2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

In seeking summary judgment, Defendants do not argue that Jones failed to allege facts establishing the first or third elements of protected conduct and causation. (*See* ECF No. 25, PageID.236) ("For purposes of this motion, [] Defendants do not dispute that Plaintiff engaged in protected conduct when he filed a grievance . . . . Nor, for the purposes of this motion, will the [] Defendants address causation."). Instead, they argue that Jones has not sufficiently pled that he suffered an "adverse action" because "a [single] shakedown of [Jones'] cell, coupled with [Tarrance's] verbal 'threats,' [] would not amount to adverse action." (*Id.*, PageID.237-38). Defendants argue that, at a minimum, they are entitled to qualified immunity because "[i]t is not clearly established that verbal statements alone, or even verbal threats accompanied by a legitimate cell search, constitute a sufficiently adverse action in the prison context." (*Id.*, PageID.248). After careful review, the Court agrees that Defendants are entitled to qualified immunity on Jones' First Amendment retaliation claim against Tarrance.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether government officials are entitled to qualified immunity, courts must consider: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

16

As to the second prong, "[f]or a right to be clearly established, 'existing *precedent* must have placed the statutory or constitutional question beyond debate.'" *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 368 (6th Cir. 2022) (emphasis in original) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021))). Put differently, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). "The plaintiff bears the burden of showing that the right was clearly established" and, to meet such a burden, "must provide on-point caselaw that would bind a panel of [the Sixth Circuit]." *Bell*, 37 F.4th at 367-68 ("a plaintiff cannot point to unpublished decisions to meet this burden."). Against these standards, Jones failed to meet his burden to show that it was clearly established that Tarrance's alleged conduct of causing a single cell shakedown in retaliation for filing grievances constituted an adverse action that would deter a person of ordinary firmness from continuing to file grievances.

While Jones is correct in his assertion that, as a general matter, "[f]iling grievances and submitting oral or written complaints to prison officials constitutes constitutionally protected conduct that may not be the basis for retaliation, and that right was clearly established at the time of the alleged incidents in this case" (ECF No. 30, PageID.323), he fails to "point to a case showing that reasonable officers would have known their actions were unconstitutional under the ***specific circumstances*** [] encountered" in this case. *Bell*, 37 F.4th at 367 (emphasis added).

17

To the contrary, the Sixth Circuit has held in unpublished decisions that "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003). And, as the Sixth Circuit explained in *Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011):

> Examples of adverse actions that this Court has held sufficient to meet the person of ordinary firmness standard include initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force. ***On the other hand, this Court has opined that prisoners are expected to endure more than the average citizen, and so not every objectionable act directed at a prisoner constitutes adverse action sufficient to deter a person of ordinary firmness from engaging in protected activities. Thus, the single search of a prison cubicle would not deter a person of ordinary firmness from pursuing constitutional grievances.***

*Reynolds-Bey*, 428 F. App'x at 503 (emphasis added) (citations and quotations omitted).[9]

Based on all of the above, as to the issue of qualified immunity, the Court cannot find that it was *clearly established* that a single cell shakedown in retaliation for filing grievances amounts to more than a de minimis action sufficient to deter a person of ordinary firmness from pursuing constitutional grievances. Jones, who bears the burden to show a violation of such a clearly established right, fails to meaningfully address the above caselaw, much less point to a published Sixth Circuit decision "that would bind a panel of

---

[9] The Court recognizes that in a more recent unpublished decision, *Williams v. Stevenson, P.C.*, 2020 WL 8512263 (6th Cir. Sept. 30, 2020), the Sixth Circuit addressed a similar First Amendment retaliation claim and, by a two-to-one vote, held that the district court erred in dismissing plaintiff's claim for failing to allege an adverse action based on a single retaliatory search of his prison cell. But, *Williams* being an *unpublished* case that was issued *after* the date of the retaliation incident at issue in this case, it fails twice over to provide the precedent necessary to defeat Tarrance's claim to qualified immunity.

[that] court" in his favor on this issue. *Bell*, 37 F.4th at 368.

Accordingly, defendant Tarrance is entitled to qualified immunity on Jones' First Amendment claim against him, and such claim should be dismissed.

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss and for Summary Judgment on the Basis of Exhaustion **(ECF No. 25)** be **GRANTED.  IT IS FURTHER RECOMMENDED** that Jones' Eighth Amendment claim against defendant Rivard be dismissed for failure to state a claim pursuant to 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. § 1915(e)(2)(B).


Dated: April 19, 2023                                        s/David R. Grand
Ann Arbor, Michigan                                          DAVID R. GRAND
                                                             United States Magistrate Judge


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 19, 2023.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager